This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Speaker Components, Inc., appeals from the order of the Summit County Municipal Court which rendered a verdict in favor of Appellee, Renaissance Technologies, Inc. We affirm.
 {¶ 2} Appellee filed a complaint against Appellant on March 2, 2001. Appellant subsequently filed an answer and counterclaim. A bench trial was held on November 8, 2001. The court found in favor of Appellee and Appellant was ordered to pay the sum of $6,079.72. Appellee was required to return all materials supplied by Appellant. Appellant timely appealed raising two assignments of error for our review.
 ASSIGNMENT OF ERROR I {¶ 3} "The trial court erred in its conclusion that [R.C. 1302] did not apply when the predominant purpose of the contract was for the manufacture of four microprocessor testers built to set specifications and tolerances."
 {¶ 4} In its first assignment of error, Appellant asserts that the trial court incorrectly concluded that R.C. 1302 did not apply to the contract between Appellant and Appellee. We disagree.
 {¶ 5} Article 2 of the Uniform Commercial Code, is codified in R.C. 1302.01 et seq. This section applies to transactions in goods. R.C.1302.02. When a mixed contract is at issue, R.C. 1302 applies if "the predominant factor and purpose of the contract is the sale of goods."Allgood Mun. Equip. Supply, Inc. v. Artino (Oct. 1, 1997), 9th Dist. No. 18184, at 14, quoting Wooster Prods., Inc. v. Magna-Tek, Inc. (Apr. 25, 1990), 9th Dist. No. 2462, at 10. See, also, Allied Indus. Serv. Corp.v. Kasle Iron Metals (1977), 62 Ohio App.2d 144, 147 ("[T]he test for the inclusion in or the exclusion from [R.C. 1302] sales provisions is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved.");Livchak v. Logsdon Sons, Inc., 9th Dist. No. 01CA007966, 2002-Ohio-5941, at ¶ 11. The burden of proving that a contract was primarily for the purchase or sale of goods is on the party who asserts that the contract is governed by R.C. 1302. See Eaton Corp. v.Taylor-Winfield Corp. (July 15, 1993), 8th Dist. No. 62361. This is a factual question and is to be determined by a review of the contractual language and the circumstances surrounding the contract formation and expected performance. Allgood Mun. Equip. Supply, Inc., supra, at 14, citing Wooster Prods., Inc., supra, at 10. An appellate court reviews questions of fact under the clearly erroneous standard. See State v.Unrue, 9th Dist. No. 21105, 2002-Ohio-7002, at ¶ 6 and ¶ 8. When factual conclusions of a trial court are challenged, "the trial court is entitled to the same presumption of correctness that is accorded regarding other factual findings." Unrue at ¶ 8, quoting Wisintainerv. Elcen Power Strut Co. (1993), 67 Ohio St.3d 352, 355.
 {¶ 6} The Ohio Supreme Court has stated that an appellate court should not reverse factual findings of the trial court if there is "some competent, credible evidence" in support of the trial court's findings.Wisintainer, 67 Ohio St.3d at 355. See, also, Unrue at ¶ 8, fn. 2. The clearly erroneous standard is highly deferential as even "some" evidence is sufficient to sustain a trial court's judgment. Unrue at ¶ 9, citing Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, at 7. "Thus, this [c]ourt is guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony." Unrue at ¶ 9, quoting Spinetti, supra, at 7-8.
 {¶ 7} In the instant case, the court found that the predominant purpose of the oral agreement between the parties was the performance of engineering services and was thus governed by common law principles of contract law. The court considered the following: the amount paid by Appellant for engineering services greatly exceeded the amount paid for electronic components; the "testers" Appellant sought to acquire were "novel and tailored" to Appellant's products; the "testers" did not previously exist in the market; Appellant compensated Appellee at an hourly rate; Appellee was unable to guarantee that the "testers" would work as Appellant desired due to their novel nature; and also evidence presented that tended to show that Appellant expected Appellee to maintain and continually develop the "testers."
 {¶ 8} Upon review of the record, we find that there was some competent, credible evidence to support the trial court's conclusion. The predominant purpose of the contract, according to Appellant's representative, Michael Griffith ("Griffith"), was "to do electronic design work for us in various items[.]" Appellant explained that over time a "more specific need" evolved; Appellee was to develop and design new "testers." Griffith provided Appellee with parameters similar to: "this is what I want the tester to do. This is what my product does, and this is what I want the tester to test on my product." Furthermore, Appellant viewed the project as "breaking new ground," and stated that he was "trying to use [Appellee's] expertise as an engineer to get this done[.]"
 {¶ 9} Additionally, Steven Hebrock ("Hebrock"), president of Renaissance Technologies, Inc., testified at trial. Hebrock stated that Griffith hired him at an hourly wage to perform various tasks for the company. Hebrock explained that he worked on the conversion of files, designed several printed circuit boards, contacted vendors and potential vendors, created drawings, and worked on designing and developing "testers."
 {¶ 10} In light of the above testimony, the trial court could correctly conclude that the purpose of the contract was to design and develop a tester and not merely to supply goods. Consequently, the court properly determined that R.C. 1302 did not apply to the contract between the parties.
 {¶ 11} Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II {¶ 12} "The trial court's conclusion that *** Appellee did not breach the contract is against the manifest weight of the evidence when Appellant established by clear and convincing evidence that Appellee failed to complete the microprocessor testers pursuant to the [timeframe] agreed upon between the parties; the microprocessor testers did not operate properly; and the microprocessor testers did not meet the specifications as agreed upon between the parties."
 {¶ 13} In its second assignment of error, Appellant maintains that the trial court's judgment was against the manifest weight of the evidence. We disagree.
 {¶ 14} The appellate court applies the same standard of review when determining whether a criminal or civil judgment is against the manifest weight of the evidence. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. "[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340. This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of the appellant. Id.
 {¶ 15} The existence of a contract is dependent upon an offer, an acceptance, and consideration. Carlisle v. T R Excavating, Inc.
(1997), 123 Ohio App.3d 277, 283, citing Tersigni v. Gen. Tire, Inc.
(1993), 91 Ohio App.3d 757, 760. Thus, for a contract to exist there must be mutual assent or a "meeting of the minds" as to the offer and acceptance. Marshall v. Beach (2001), 143 Ohio App.3d 432, 436-37. In a civil case, a plaintiff is to prove his case by a preponderance of the evidence. See Lewistown Foundry Machine Co. v. Hartford Stone Co.
(1915), 92 Ohio St. 76, paragraph two of the syllabus.
 {¶ 16} At trial, Hebrock testified that he performed "straight clock work in exchange for money." Hebrock stated that he would work on various projects assigned by Griffith. Hebrock explained that he eventually began designing four "testers" for Griffith. He stated that he did not guarantee the "testers" performance at a specific point in time because "[he] believed [he] would work on them until they worked *** [as he] was on an hourly basis working on many projects besides testers[.]" Hebrock further explained that the guidelines for the performance of the "testers" were nebulous and were constantly changed. Hebrock recalled remarking to Griffith that "it was almost a certainty that those testers wold need some fine tuning *** to accommodate the range of products that they were supposed to test." Hebrock stated that he did not contract to have the "testers" completed on a specific date. Furthermore, there is no writing containing the terms of an agreement; Griffith simply expressed his desire to have the "testers" completed by a date-certain, and Hebrock "had given [Griffith] dates in which [he] earnestly believed that [he] could have them completed based on the knowledge [he] had at that time[.]"
 {¶ 17} Thomas Milan ("Milan") testified that he was present at a meeting between Hebrock and Griffith. Milan recalled Griffith requesting the "testers" by a certain date. Milan further testified that Hebrock stated he could not have the "testers" completed by the requested date but "they [had] agreed on a certain time frame that yes, it would be done."
 {¶ 18} Lastly, Griffith testified that "[t]here w[ere] not any specific specifications per se laid out," but Hebrock had indicated that he understood how they were supposed to work in regards to electronics. He explained that Hebrock was hired on an hourly basis to work on numerous projects. Griffith acknowledged that there were no specifics in writing; the terms and parameters were verbal. He remarked that although they were "breaking new ground" he needed the "testers" completed within a reasonable time. Griffth stated that he informed Hebrock that the "testers" were needed before he was leaving for Thailand. Griffith maintained that he requested the "testers" be completed by June 25, 1999, but Hebrock had given him a date of completion as August 3 or 4, 1999. He testified that Hebrock supplied him with only two of the four "testers" on August 4, 1999. The third "tester" was shipped to Thailand shortly thereafter. Griffith stated that Hebrock "told [him] there might be some program glitches in it, but they did work, and we actually took units from the back and put [them] in the tester and they passed it." However, Griffith explained that defective units were not tested and the "testers" were later discovered to be unreliable. Upon this discovery, Griffith contacted Hebrock and identified the difficulties encountered. Griffith was notified by Hebrock that he would fix the machines if he was compensated. Griffith testified that another individual then fixed the "testers" as Griffith was not further compensating Hebrock.
 {¶ 19} In the case sub judice, the judge had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we are to give deference to the court's judgment as matters of credibility are primarily for the trier of fact. See State v. Lawrence
(Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. We find no indication that the trier of fact lost its way and committed a manifest miscarriage of justice in rendering a judgment in favor of Appellee. This is not a case where the evidence weighs heavily in favor of Appellant, meriting a reversal of the judgment and a new trial. Therefore, we conclude that the judgment of the Summit County Municipal Court was not against the manifest weight of the evidence. Accordingly, Appellant's second assignment of error is overruled.
 {¶ 20} Appellant's assignments of error are overruled. The judgment of the Summit County Municipal Court is affirmed.
CARR, J., WHITMORE, J., CONCUR