**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0149n.06
Filed: February 23, 2007

No. 06-3777

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Wagner-Meinert, Inc., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| EDA Controls Corporation, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE:    Merritt, Daughtrey, and Griffin, Circuit Judges.**

**MERRITT, Circuit Judge.**  The District Court granted judgment on the pleadings against Wagner-Meinert, Inc., the plaintiff, under Rule 12(b)(6) and (c), and this appeal followed.  In 1995, by written contract, Wagner-Meinert, Inc. became the agent of its customer, Frozen Specialties, Inc. (a producer of frozen food) to design, build, install, maintain and manage an ammonia refrigeration system.  As part of providing the refrigeration system, Wagner-Meinert contracted with EDA Controls Corporation to provide ammonia detection equipment for the refrigeration system to detect any release of ammonia in the refrigeration system.  The ammonia detection system cost $13,228 and was delivered to Frozen Specialties in August 1995.  The ammonia detection system was installed

by Wagner-Meinert, not by EDA,[1] although EDA did provide a "check" of the system after it was installed by Wagner-Meinert and provided one day of onsite training to personnel from Frozen Specialties. No further goods or services were provided by EDA to Wagner-Meinert in connection with the ammonia detection system at Frozen Specialties, and the record indicates no further communication between the two parties concerning any aspect of the ammonia detection system until the events that gave rise to this lawsuit.

On January 16, 1999, three and one-half years after the ammonia detection system was installed, a fire broke out at Frozen Specialties, causing extensive damage reimbursed by insurance in the amount of $12,744,126.93. The cause of the fire is unknown, but Wagner-Meinert alleges that EDA's detection system failed to detect a release of ammonia that provided fuel for the fire, increasing the damage to Frozen Specialties. Wagner-Meinert further alleges that the failure of EDA to properly train the Frozen Specialties employees caused the fire damage to be substantially worse.

Frozen Specialties' insurer, Atlantic Mutual Insurance Company, paid the loss on the policy and, as the subrogee of Frozen Specialties' rights, brought an action against Wagner-Meinert alleging breach of contract and negligence. EDA was not named as a party and Wagner-Meinert did not implead or otherwise seek to join EDA as a third party to the action so that the respective rights of all of these parties could be adjudicated in one action. The jury found Wagner-Meinert liable for

---

[1]The parties dispute which company installed the ammonia detection system, with Wagner-Meinert claiming that EDA installed the system and EDA claiming that Wagner-Meinert installed it. Although not discussed as a factual dispute in the district court's order, the district court found that Wagner-Meinert installed the system and we do not hold this finding clearly erroneous. In any event, even if EDA installed the system, it would not change the outcome of this appeal.

breach of contract and awarded Atlantic Mutual $2,500,000. *Atlantic Mutual Ins. Co. v. Wagner-Meinert, Inc.*, No. 3:01CV7302 (N.D. Ohio Apr. 8, 2004) (jury verdict) (J.A. at 68). Following the jury verdict, Wagner-Meinert and Atlantic Mutual settled the action for $3,000,000. Atlantic Mutual withdrew the negligence claim before the case was submitted to the jury, so the resulting verdict was only on the breach of contract claim.

Wagner-Meinert filed this diversity action in federal court against EDA in 2004 before the suit between Wagner-Meinert and Atlantic Mutual was resolved. By agreement of the parties, the action between Wagner-Meinert and EDA was stayed to await the outcome of the suit between Wager-Meinert and the insurance company. In May 2005, a year after the jury trial concluded, the stay was lifted and the suit between Wagner-Meinert and EDA continued. Wagner-Meinert's complaint presents alternative counts for indemnification for breach of an "express contract," or "implied contract," or "negligent" performance of the contract and for contribution under Ohio Revised Code § 2307.25. (J.A. at 6) EDA filed a motion for judgment on the pleadings pursuant to Rule 12(c) which the district court granted on April 12, 2006. *Wagner-Meinert, Inc. v. EDA Controls Corp.*, 444 F. Supp. 2d 800 (N.D. Ohio 2006), J.A. at 36.

Wagner-Meinert raises one issue on appeal phrased as follows:

Whether the court erred to the prejudice of Appellant by granting a Motion for Judgment on the Pleadings and dismissing and closing Appellant's case when, in fact, the complaint filed by Plaintiff/Appellant, Wagner-Meinert, Inc., alleged numerous facts supporting the claims, including breach of contract (express and/or implied) and claims for contribution and indemnity pertaining to related litigation.

**1. Breach of Contract.** Wagner-Meinert's claims for breach of contract are barred by the four-year statute of limitations for contracts relating to the sale of goods, as the District Court

concluded. O.R.C. § 1302.98(A). (An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.) Wagner-Meinert argues that the contract is not one for the sale of goods, but is instead a service contract that should be subject to the 15-year statute of limitations for general contracts in Ohio. This argument is clearly wrong.

The service portion of the contract was less than 5% of the contract price, and we agree with the District Court that it should be characterized as a contract for the sale of the system. The contract in this case is the purchase order sent by Wagner-Meinert to EDA based on EDA's price quotation. (J.A. at 16-19) The purchase order itemizes the various components of the ammonia detection system and gives the amount to be paid as $13,228. This price includes $600 for an "On Site Start up Assistance," which the contract specifies is for one day. The record indicates that this service was to train Frozen Specialties employees about the ammonia detection system. Because the sales contract includes both goods and services we will view the contract as "mixed" contract. In a mixed contract for goods and services, the test for inclusion or exclusion under §1302.98 with its four-year statute of limitations is "whether the predominate factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved." *Allied Indus. Serv. Corp. v. Kasle Iron & Metals, Inc.*, 62 Ohio App. 2d 144, 147 (1977). Because we find no disputed facts as to the nature of the sales contract at issue, it was proper for the district court to rule as a matter of law on the nature of the contract and to determine that the four year statute was applicable.

2. **Indemnification.** Ohio law defines indemnity as arising from "contract, either express or implied, and is the right of a person who has been compelled to pay what another should have paid

to require reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 240 (1987) (citing *Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St. 2d 11, 14 (1975)). In other words, when a person is secondarily liable due to his relationship to the other party, and is compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid from the one who is actually at fault, and who, in fact, caused the injuries. *See Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 603 (1944). In an indemnity action, a plaintiff seeks complete reimbursement from the party primarily liable for the damages plaintiff has incurred. The complaint here, however, states no facts that would support either an oral contract or an "implied contract" based on the actions of the parties shifting the loss to EDA under a theory of indemnity. Nor does the complaint state facts that would support an indemnity action for restitution arising from the relative fault of joint tortfeasors. *See Restatement of Restitution*, §§ 89-98 (1937); Palmer, *Law of Restitution* § 10.6(c)(1978). After a trial in which the jury returned a large verdict against plaintiff in this action, plaintiff is unable to state facts showing that EDA was responsible for the fire and should suffer the loss. Hence the District Court was correct in dismissing the indemnity count.

3. **Statutory Contribution.** A contribution action under Ohio law seeks to redistribute damages in tort based on a "tortfeasor's proportionate share of the common liability."[2] Wagner-

---

[2]**2307.25 Right of contribution; settlements; subrogation; indemnity**

(A) Except as otherwise provided in sections 2307.25 to 2307.28 of the Revised Code, if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has

Meinert alleges that EDA failed "to perform its obligations under the contract" and hence "has an obligation to contribute to any judgment rendered against [it]." This claim for "contribution" for breach of contract does not come within the coverage of Ohio's contribution statute, as the District Court found, nor does the claim attempt to state how any "common [tort] liability" should be apportioned. The judgment against Warner-Meinert was in contract. The contribution count contains no factual or theoretical basis for shifting some of Wagner-Meinert's liability to EDA.

For the foreging reasons, the judgment of the district court is affirmed.

---

paid more than that <u>tortfeasor's proportionate share of the common liability</u>, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor may be compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability. There is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established. (Emphasis added.)