ANKLE & FOOT CARE CENTERS,
Plaintiff,

v.

INFOCURE SYSTEMS, INC,
et al., Defendants.

No. 4:01–CV–445.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 27, 2001.

Brad A. Rimmel, George L. White, Youngstown, OH, Richard J. Thomas, Henderson, Covington, Messenger, Newman, Youngstown, OH, for plaintiff.

Brian P. Kopp, Betras, Maruca & Kopp, Youngstown, OH, Claudia Mayer Anders, William J. Sheppard, Morris, Manning & Martin, Atlanta, GA, Gary F. Werner, Kahn, Michael H. Diamant, Shira Adler, Kleinman, Yanowitz & Arnson, Cleveland, OH, for defendants.

## ORDER

GWIN, District Judge.

On July 23, 2001, Defendants InfoCure Systems, Inc. and DR Software, Inc., (collectively "InfoCure" or the "defendants"), filed a motion for summary judgement on all claims set forth in Plaintiff Ankle & Foot Care Centers'("Ankle & Foot's") amended complaint.[1] (Doc. 34) In deciding this motion, the Court must determine whether genuine issues of material fact exist regarding the plaintiff's eight claims,

---

1. On July 10, 2000, Plaintiff Ankle & Foot Care Centers ("Ankle & Foot") filed its complaint in the court of Common Pleas of Mahoning County, Ohio. (Doc. 1, Ex. A). Count I alleged breach of contract. Count II alleged intentional misrepresentation. Count III alleged negligent misrepresentation, and Count IV alleged detrimental reliance. On October 11, 2000 Plaintiff Ankle & Foot amended its complaint to include claims for breach of express warranty (Count V), breach of implied warranty of merchantability (Count VI), breach of implied warranty for a particular purpose (Count VII), and unjust enrichment (Count VIII). (Doc. 1, Ex. F). On February 23, 2001, Defendants InfoCure Systems, Inc. and DR Software, Inc. ("InfoCure" or the

which involve breach of contract, breach of express and implied warranties, intentional and negligent misrepresentation, detrimental reliance, and unjust enrichment.

The Court finds that genuine issues of material fact exist regarding the plaintiff's claims for breach of contract, breach of express and implied warranties, and intentional and negligent misrepresentation. As a result, the Court denies the defendants' summary judgment motion as to those claims. The Court finds that the defendants are entitled to summary judgment on the plaintiff's claims for detrimental reliance and unjust enrichment. Therefore, the Court grants the defendants' motion for summary judgment as to those claims.

## I. Description of Arguments

This case involves a dispute between a company that develops computer software and the company that used the software for its medical billing and insurance reimbursement. Defendant InfoCure, a Georgia corporation, develops and markets medical billing software programs.[2]

Plaintiff Ankle & Foot Care Centers is an Ohio general partnership with its principal place of business in Boardman, Ohio. Dr. Lawrence DiDomenico formed Ankle & Foot in 1994 with eight other individual partners, all of whom are doctors of podiatric medicine. Plaintiff Ankle & Foot Care Centers used InfoCure software to perform medical billing and insurance reimbursement.

Defendant InfoCure moves for summary judgment as to all claims set forth in Plaintiff Ankle & Foot's amended complaint. As the predominant basis for its motion, InfoCure says that its standard "License and Software Support Agreement" ("License Agreement") represents the agreement reached by the parties. Defendant InfoCure says that no genuine issues of material fact exist because the License Agreement expressly waives Plaintiff Ankle & Foot's claims for breach of contract, breach of express and implied warranties, and negligent and intentional misrepresentation. Defendant InfoCure also says no issues of fact exist regarding the negligent and intentional misrepresentation claims because, even if the License Agreement does not preclude the claims, InfoCure never made any representations to Ankle & Foot.

Plaintiff Ankle & Foot says it never agreed to the License Agreement. It argues that the License Agreement is invalid and unenforceable, in part because neither party ever signed it. The plaintiff instead says that an oral agreement reached before the defendant ever sent out the License Agreement governs the parties' relationship. Plaintiff Ankle & Foot further says that InfoCure made representations throughout the parties' negotiations regarding the quality and performance of the software, as well as the hardware necessary to operate the program.

As further support for its summary judgment motion, Defendant InfoCure says that Chapter 1302 of the Ohio Revised Code does not apply to the subject matter of the parties' relationship, namely the transaction involving Windows-based medical billing software. Ohio adopted Article 2 of the Uniform Commercial Code, which deals with the sale of goods, as Chapter 1302 of the Ohio Revised Code. Chapter 1302 applies only to transactions

"defendants") removed the case to this Court. (Doc. 1).

**2.** Defendant DR Software, Inc. merged into Defendant InfoCure Systems, Inc. in July 1997 and ceased to exist as a separate corporate entity. Defendant InfoCure Systems, Inc. then merged into InfoCure Corporation on or about February 22, 2001. At all relevant times the entities were Georgia corporations with a principal place of business in Atlanta, Georgia.

involving the sale of goods. InfoCure says the transaction for the software at issue is a contract involving a license, not a sale, and the software is not a good. Therefore, InfoCure says that it is entitled to judgment as a matter of law because no sale of goods is involved in its relationship with Plaintiff Ankle & Foot Care Centers. InfoCure argues that the plaintiff can only make claims for breach of implied warranties in a sale of goods context.

In response to Defendant InfoCure's argument that no Article 2 claim can be made, Plaintiff Ankle & Foot says not only is the software a "good" as defined by section 1302.01, but the transaction is also one for a sale. Therefore, the plaintiff says that it can assert claims for the breach of the implied warranties of merchantability and fitness for a particular purpose because the transaction was one for a sale of goods.

In addition to its argument that no Article 2 claim can be made, InfoCure also says that Plaintiff Ankle & Foot's claims for detrimental reliance and unjust enrichment fail as a matter of law. The plaintiff does not respond to the defendants' motion for summary judgment as to those claims.

## II. Factual Background

In 1991, before forming Ankle & Foot, Dr. DiDomenico used computer software from DR Software to perform his medical billing and insurance reimbursement. He continued to use the DR Software program from 1991 until August 1997, when he learned of DR Software's new Windows-based version of the program called "Windows Information System for Doctor's Office Management" ("WISDOM").

Dr. DiDomenico had several discussions with Donald Rogers, the president of DR Software, regarding the WISDOM software. After these discussions, Dr. DiDomenico decided to convert Ankle & Foot's billing software to WISDOM.[3] In August 1997, Plaintiff Ankle & Foot ordered WISDOM from Defendant InfoCure. In conjunction with the installation of the new WISDOM billing software, Plaintiff Ankle & Foot purchased more than $17,000 of hardware from Gateway needed to operate the software.

After receiving the plaintiff's order for WISDOM, but before shipping the software, Defendant InfoCure sent Ankle & Foot a cover letter confirming the order along with two copies of its standard "License and Software Support Agreement." The cover letter, dated August 12, 1997, directed the plaintiff to sign and return both copies of the agreement. For purposes of the summary judgment motion, the parties concede that neither the plaintiff nor the defendants signed the License Agreement. Plaintiff Ankle & Foot denies receiving the License Agreement.

Plaintiff Ankle & Foot paid Defendant InfoCure for WISDOM on August 19, 2001, and InfoCure delivered the software to Ankle & Foot on August 21, 1997. After the defendants installed WISDOM and trained the plaintiff's personnel on its use, the plaintiff began using WISDOM as its

---

**3.** The parties dispute the content of these discussions. Plaintiff Ankle & Foot says that Donald Rogers stated the WISDOM software was superior, better, faster, and more efficient than the DR Software program Ankle & Foot was using. Ankle & Foot says that Rogers informed Dr. DiDomenico that Defendant DR Software was discontinuing its service and support for the DR Software Ankle & Foot currently employed. Ankle & Foot also says that Rogers described what type of computer hardware to purchase and represented that Gateway sold compatible hardware. Additionally, Ankle & Foot says Dr. DiDomenico advised Rogers of the large size of Ankle & Foot's practice and its plan for expansion, and that even with this knowledge, Rogers continued to recommend the WISDOM software to Ankle & Foot. The defendants deny making any representations at all to Ankle & Foot.

exclusive medical billing software. Plaintiff Ankle & Foot used WISDOM exclusively from October 1997 until October 1999. During that period, the plaintiff experienced problems with WISDOM, and the defendant provided telephone support and updates for the program. The plaintiff also experienced problems with the alignment of its reimbursement forms, problems that the defendant did not resolve. In November 1999, Plaintiff Ankle & Foot obtained a new billing software program and discontinued its exclusive use of WISDOM.

### III. Standard and Analysis

#### A. *Summary Judgment Standard*

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *See Waters v. Morristown,* 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *See Daughenbaugh v. Tiffin,* 150 F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *See Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996) (internal quotation marks omitted).

#### B. *Analysis*

At the heart of the underlying case is the dispute about which contract governs the parties' relationship and whether the UCC applies to the instant transaction. The defendants say the License Agreement is the governing contract and that the UCC does not apply. The defendants base their summary judgment motion in major part on these assumptions. Defendant InfoCure relies almost exclusively on the applicability of the License Agreement and the inapplicability of the UCC to show an absence of genuine issues of material fact. In making these arguments, however, the defendants fail to show an absence of disputed fact that would entitle Info-Cure to summary judgment.

At the summary judgment stage, the Court must draw all reasonable inferences regarding disputed facts in favor of the nonmoving party. *See Nat'l Enters.,* 114 F.3d at 563. To grant Defendant Info-Cure's summary judgment motion, the Court would need to draw inferences in favor of the moving party. Therefore, except as to the claims for unjust enrichment and detrimental reliance, which fail as a matter of law,[4] the Court denies Info-

---

4. For a discussion of the unjust enrichment and detrimental reliance claims, see *infra* Part III.B.3–4.

Cure's motion for summary judgment. To do otherwise would offend the well-established law governing summary judgment.

### 1. *Claims Relating to Breach of Contract*

Defendant InfoCure moves for summary judgment on Plaintiff Ankle & Foot's claims relating to breach of contract.[5] The outcome of Defendant InfoCure's motion for summary judgment on these claims hinges primarily on whether the License Agreement represents the contract between the parties and whether the UCC applies. The defendants assume the License Agreement is valid and advance their arguments from that starting point. This presumes erroneously that the Court will find that the License Agreement governs the parties' relationship as a matter of law.

"Whether or not a contract exists is a question of fact." *PHD, Inc. v. Coast Business Credit,* 147 F.Supp.2d 809, 819 (N.D.Ohio 2001) (citing *Oglebay Norton Co. v. Armco, Inc.,* 52 Ohio St.3d 232, 235, 556 N.E.2d 515 (1990); *Gruenspan v. Seitz,* 124 Ohio App.3d 197, 705 N.E.2d 1255, 1264 (1997); *Garrison v. Daytonian Hotel,* 105 Ohio App.3d 322, 663 N.E.2d 1316, 1317 (1995)). Here, the parties present different versions of the events leading to the formation of a contract. The parties also dispute which contract represents their agreement. While the defendants say the License Agreement governs the parties' relationship, the plaintiff says that the parties entered into an agreement regarding the WISDOM software before the defendants ever mailed out the License Agreement.

■ The Court may only resolve factual issues at the summary judgment stage if the facts are so one sided that one party must prevail as a matter of law. *See Terry Barr,* 96 F.3d at 178. Here, the facts are not so one sided. Plaintiff Ankle & Foot ordered the WISDOM software from the defendants. The defendants say this order constituted an offer to which InfoCure responded by sending its License Agreement to Ankle & Foot. Defendant InfoCure says that it mailed two copies of the License Agreement to Plaintiff Ankle & Foot before InfoCure shipped any software to the plaintiff. The defendants say because the plaintiff received the License Agreement, had an opportunity to show it to its attorneys, and did not object to it, Ankle & Foot's silence operated as acceptance of the terms of that agreement. The defendants further say that Ankle & Foot's performance under the agreement, coupled with its acceptance of the defendants' performance under the License Agreement terms, shows Ankle & Foot's intent to be bound by the agreement.

■ Plaintiff Ankle & Foot tells a different story. The plaintiff acknowledges that it ordered the WISDOM software from the defendants. According to the plaintiff, however, the parties reached an oral agreement before August 12, 1997, when InfoCure sent out the License Agreement. The plaintiff denies ever receiving the License Agreement, and says there is no evidence that it ever showed the License Agreement to its attorneys. Until these basic factual disputes are resolved, judgment as a matter of law is not appropriate. *See, e.g., PHD, Inc.,* 147 F.Supp.2d at 819–20 (finding that the parties' differing versions of the events sur-

---

5. Plaintiff Ankle & Foot asserts claims in its amended complaint for breach of contract (Count I), breach of express warranty (Count V), breach of implied warranty of merchantability (Count VI), and breach of implied war-ranty for a particular purpose (Count VII). The Court refers to Counts I, V, VI, and VII collectively as "claims relating to breach of contract."

rounding the disputed agreement presented issues of fact for a jury).

In the summary judgment motion, Defendant InfoCure relies exclusively on the express language of the License Agreement to defeat the plaintiff's claims for breach of contract and breach of express warranty. Defendant InfoCure also relies on the language of the License Agreement as one reason to grant its summary judgment motion on the plaintiff's claims for breach of the implied warranties.

In addition to the argument that the plain language of the License Agreement precludes enforcement of the implied warranties, the defendants rely on the assumption that the UCC does not apply to the instant transaction. The defendants correctly note that Article 2 of the UCC applies only to the sale of goods. Defendant InfoCure then asks the Court to conclude as a matter of law that the UCC does not apply to the instant transaction because it is not a sale of goods. For a transaction such as the present one, however, the Court cannot make such a determination.

 Whether the UCC governs a mixed contract for goods and services is a question of fact. *See Urban Indus., Inc. v. Tectum, Inc.,* 81 Ohio App.3d 768, 774, 612 N.E.2d 382, 386 (1992); *Arlington Elec. Constr. v. Schindler Elevator Corp.,* 1992 WL 43112, *4 (Ohio Ct.App. March 6, 1992). Ohio courts apply the predominant purpose test[6] to mixed contracts to determine whether the predominant purpose of the contract is for the sale of goods. *See Delorise Brown, M.D., Inc. v. Allio,* 86 Ohio App.3d 359, 362, 620 N.E.2d 1020, 1021–22 (1993) (citing *Allied Indus. Serv.*

*Corp. v. Kasle Iron & Metals,* 62 Ohio App.2d 144, 405 N.E.2d 307 (1977)).

The defendants attempt to distinguish *Delorise Brown* from the instant case so that the question of whether the UCC applies will not be one of fact. The defendants say *Delorise Brown* is distinguishable because InfoCure's transaction with Ankle & Foot was not mixed. This argument misconstrues the meaning of "mixed" contract.

The *Delorise Brown* court is clear that mixed contracts are ones involving both goods and services. *See Delorise Brown,* 86 Ohio App.3d at 362, 620 N.E.2d at 1021. The contract in *Delorise Brown* was mixed because it involved the sale of computer hardware, software, and training. The *Delorise Brown* court found the hardware and software to be goods, and the training to be an incidental service. *See id.*

The defendants, however, say that InfoCure's agreement with Ankle & Foot is not mixed because it does not involve both hardware and software. *See Defendants' Reply* at 11 (characterizing the *Delorise Brown* contract as mixed because of the presence of hardware and software and stating that because Ankle & Foot ordered its hardware from Gateway, the agreement at issue is not a mixed contract). This argument misstates the test for determining what constitutes a mixed contract.

 The agreement between InfoCure and Ankle & Foot, whether governed by the License Agreement or an earlier oral agreement, included the acquisition of software and the provision of training. The presence of software and training in the same transaction appears to make the

6. The predominant purpose test states that whether a contract "falls under the ambit of Article 2 of the Uniform Commercial Code as contained in R.C. Chapter 1302" depends upon "whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods with labor incidentally involved." *Delorise Brown, M.D., Inc. v. Allio,* 86 Ohio App.3d 359, 362, 620 N.E.2d 1020, 1021–22 (1993).

agreement mixed under *Delorise Brown's* definition of the term. Because a question remains as to whether the instant agreement is predominantly for goods or for services, and that question is one of fact, the Court cannot decide this issue as a matter of law.

Therefore, because questions of fact remain as to whether the License Agreement governs the parties' relationship and whether the UCC applies, the defendants are unable to show an absence of genuine issues of material fact on the claims relating to breach of contract. Accordingly, the Court denies Defendant InfoCure's summary judgment motion on Ankle & Foot's claims for breach of contract, breach of express warranty, and breach of the implied warranties of merchantability and fitness for a particular purpose.

### 2. Negligent and Intentional Misrepresentation

Defendant InfoCure moves for summary judgment on Plaintiff Ankle & Foot's claims for negligent and intentional misrepresentation. Defendant InfoCure bases its motion in part on the argument that the express terms of the License Agreement preclude claims for negligent and intentional misrepresentation. The language upon which Defendant InfoCure relies states: "You expressly acknowledge that no representations other than those contained in this agreement have been made respecting the goods or services to be provided hereunder, and that you have not relied on any representation not expressly set out in this agreement." *See License & Software Support Agreement,* Doc. 35, Ex. E at 6. Because the Court cannot determine as a matter of law that the License Agreement governs the parties' relationship, the argument that the License Agreement precludes the plaintiff's misrepresentation claims necessarily fails.

The defendants also say that they are entitled to summary judgment on the misrepresentation claims because InfoCure never made any representations to Ankle & Foot. Defendant InfoCure denies that any of its agents made representations to the plaintiff about WISDOM or computer hardware related to running WISDOM. However, in response Plaintiff Ankle & Foot points to affidavits and deposition testimony that contradict what the defendants say. Assuming for purposes of the summary judgment motion that Ankle & Foot's version of the facts is accurate, the defendants do not prove an absence of factual issues related to the misrepresentation claims. Therefore, the Court denies Defendant InfoCure's summary judgment motion on the plaintiff's negligent and intentional misrepresentation claims.

### 3. Detrimental Reliance

Defendant InfoCure moves for summary judgment on Plaintiff Ankle & Foot's claim for detrimental reliance. The plaintiff offers no argument about the detrimental reliance claim in its opposition to the defendants' summary judgment motion. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

Summary judgment is appropriate because no cause of action for detrimental reliance exists under Ohio law. "A claim of detrimental reliance is not a separate cause of action under Ohio law but rather an element of several claims that exist in equity to enforce a contract." *715 Spencer Corp. v. City Envtl. Servs.,* 80 F.Supp.2d 755, 763 (N.D.Ohio 1999) (citing *Gottfried–Smith v. Gottfried,* 119 Ohio App.3d 646, 650, 695 N.E.2d 1229, 1231 (1997)). Therefore, the Court grants Defendant InfoCure's summary judgment motion on this count.

### 4. *Unjust Enrichment*

Defendant InfoCure also moves for summary judgment on Plaintiff Ankle & Foot's claim for unjust enrichment. The plaintiff makes no argument about the unjust enrichment claim in its opposition to the defendants' summary judgment motion. If the party opposing summary judgment does not "set forth facts showing that there is a genuine issue for trial, .... summary judgment, if appropriate, will be entered against the adverse party." Fed. R.Civ.P. 56(e).

Summary judgment is appropriate here as well. A party to a contract cannot seek damages under the equitable theory of unjust enrichment when an express or implied contract covers the subject matter of that claim. *See, e.g., Davis & Tatera, Inc. v. Gray–Syracuse, Inc.*, 796 F.Supp. 1078, 1085–86 (S.D.Ohio 1992); *Weiper v. W.A. Hill & Assocs.*, 104 Ohio App.3d 250, 261–62, 661 N.E.2d 796, 804 (1995).

The parties dispute which contract governs the subject matter of their agreement. The defendants say the License Agreement controls, and the plaintiff says an oral contract governs. In either case, however, a contract exists that governs the subject matter of the claim. Because a contract exists, Plaintiff Ankle & Foot cannot pursue a claim for unjust enrichment. *See Wild Fire, Inc. v. Laughlin*, 2001 WL 227395, *3 (Ohio Ct.App. Mar.9, 2001) ("The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule."). Therefore, the Court grants Defendant InfoCure's motion for summary judgment on Plaintiff Ankle & Foot's unjust enrichment claim.

### 5. *Punitive Damages and Attorney's Fees*

Defendant InfoCure says that Plaintiff Ankle & Foot's claims for punitive damages and attorney's fees fail as a matter of law because the claims upon which the recovery is based fail as a matter of law as well. As discussed above, however, genuine issues of material fact exist regarding the claims upon which the plaintiff seeks damages. Therefore, the underlying claims do not fail as a matter of law. Accordingly, until those factual issues are decided, the Court cannot determine whether or not the plaintiff is entitled to punitive damages and attorney's fees.

### IV. Conclusion

Defendant InfoCure moved for summary judgment on all eight claims set forth in Plaintiff Ankle & Foot's amended complaint. Because genuine issues of material fact exist, the Court denies the defendants' summary judgment motion as to the plaintiff's claims for breach of contract, breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, and negligent and intentional misrepresentation. Because the plaintiff's claims for detrimental reliance and unjust enrichment fail as a matter of law, the Court grants the defendants' summary judgment motion as to those claims.

IT IS SO ORDERED.