**CARCORP, INC., Appellant,**

v.

**CHESROWN OLDSMOBILE—GMC TRUCK, INC., Appellee.**

[Cite as *Carcorp, Inc. v. Chesrown Oldsmobile—GMC Truck, Inc.*, 159 Ohio App.3d 87, 2004-Ohio-5946.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–700.

Decided Nov. 9, 2004.

88

Harris, McClellan, Binau & Cox, P.L.L., Mark S. Coco, Dan J. Binau, and Ralph E. Dill, for appellant.

Whann & Associates, L.L.C., Jay F. McKirahan and Jonathan R. Fulkerson, for appellee.

SADLER, Judge.

{¶ 1} Plaintiff-appellant, Carcorp, Inc., appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted the motion styled "Motion to Dismiss or, Alternatively, for Summary Judgment" filed by defendant-appellee, Chesrown Oldsmobile—GMC Truck, Inc. In granting the motion, the court of common pleas dismissed appellant's claims for breach of a contract for the sale of certain of appellee's assets, for a declaratory judgment, and for enforcement of the alleged oral contract on the equitable ground of promissory estoppel.

{¶ 2} In its original complaint, appellant alleged that on or about June 11, 2002, the parties orally agreed to the sale to appellant of certain of appellee's assets. Specifically, appellant alleged that appellee agreed to sell its rights to its GMC franchise/dealer agreements with General Motors, along with its related customer lists, service records, good will, and factory-parts inventory. Appellant further alleged that the parties agreed upon a purchase price of $1.1 million. Finally, appellant alleged that the parties agreed that appellant would tender $5,000 in

earnest money, which, according to the original complaint, appellant did tender on or about June 15, 2002.

{¶ 3} The original complaint stated that appellee returned the earnest money one month later and repudiated the contract. Appellant concluded the pleading by alleging that it stands ready, willing, and able to perform, that all preconditions have been satisfied, and that it is entitled to enforcement of the contract by specific performance. In its answer, appellee denied the existence of a contract, and averred, "There were only discussions as to what form a contract might take for a sale of Chesrown's franchise rights. * * * [Appellant] drafted a proposed written contract which was never executed."

{¶ 4} On November 26, 2002, along with its answer, appellee filed its motion to dismiss/motion for summary judgment. Therein, appellee argued that the original complaint failed to state a claim upon which relief could be granted because the claim was barred by the statute of frauds found in R.C. 1301.12. On December 6, 2002, appellee refiled the same answer and motion to dismiss/motion for summary judgment that it had previously filed.

{¶ 5} On December 13, 2002, appellant filed a motion to amend its complaint instanter, pursuant to Civ.R. 15, along with a proffered first amended complaint. The first amended complaint contained the addition of a promissory estoppel claim. Contemporaneously, appellant filed its memorandum opposing appellee's dispositive motion. Therein, appellant argued that its breach of contract claim was subject to the statute of frauds contained in R.C. 1302.04, which pertains to the sale of goods. Appellant further argued that its claim was not barred because the subject of the alleged contract falls under the "merchant exception" of R.C. 1302.04(B). Relying on the new theory contained in the first amended complaint, appellant also argued that promissory estoppel took its claim outside of any applicable statute of frauds. In support of its promissory estoppel claim, appellant submitted an affidavit, a copy of a proposed written agreement, and a copy of its $5,000 earnest money draft sent with the proposed written agreement.

{¶ 6} In its memorandum in reply, appellee countered appellant's argument regarding its promissory estoppel claim and submitted its own affidavit, as well as a copy of correspondence from one of appellant's attorneys. A surreply and a reply to the surreply were filed. The court never ruled upon the motion for leave to amend the original complaint. However, on June 13, 2003, the court of common pleas journalized a decision and entry granting appellee's motion for summary judgment as to the breach of contract and promissory estoppel claims. It is from this decision and entry that appellant now appeals and asserts the following three assignments of error for our review:

1. The trial court erred in granting summary judgment in favor of Chesrown Oldsmobile—GMC, Truck, Inc.

2. The trial court erred in considering material outside the pleadings submitted by Chesrown Oldsmobile—GMC, Truck, Inc. without, pursuant to Rule 56(F) of the Ohio Rules of Civil Procedure, permitting Carcorp, Inc. to conduct any discovery.

3. The trial court erred by failing to apply the standards contained in Rule 12(B)(6) of the Ohio Rules of Civil Procedure to the resolution of the dispositive motion before it.

{¶ 7} We will discuss these assignments of error out of order. In support of its second assignment of error, appellant argues that the trial court erred in granting summary judgment to appellee without allowing appellant to conduct discovery so that it could "properly counter" the evidence attached to appellee's reply memorandum. Appellant's argument is unavailing. " '[A] party who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve its rights thereto for purposes of appeal.' " *Maschari v. Tone,* 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 20, quoting *Taylor v. Franklin Blvd. Nursing Home, Inc.* (1996), 112 Ohio App.3d 27, 30, 677 N.E.2d 1212. The record reveals that appellant never moved the court, pursuant to Civ.R. 56(F), for a delay of the court's consideration of appellee's motion for summary judgment pending discovery. Accordingly, appellant has not preserved for purposes of this appeal the trial court's failure to delay ruling on the motion for summary judgment pending further discovery. Appellant's second assignment of error is overruled.

{¶ 8} In support of its third assignment of error, appellant argues that the trial court erred in deciding appellee's dispositive motion pursuant to the standard found in Civ.R. 56 and that it should have used the standard found in Civ.R. 12(B)(6). According to appellant, because appellee submitted with its November 26, 2002 motion no evidentiary materials of the type specified in Civ.R. 56(C), appellee could not possibly have met its initial burden, under Civ.R. 56, of demonstrating its entitlement to judgment as a matter of law. Thus, urges appellant, the trial court should have abandoned Civ.R. 56 altogether, and should have decided appellee's motion under Civ.R. 12(B)(6) only.

{¶ 9} Initially, we note that appellee was not required to submit affidavits or other evidentiary materials in order to seek and receive a summary judgment on the ground that the statute of frauds bars appellant's claim for breach of contract. Civ.R. 56(B) provides, "A party against whom a claim * * * is asserted or a declaratory judgment is sought may, at any time, move *with or without supporting affidavits* for a summary judgment in the party's favor as to all or any part of the claim * * *." (Emphasis added.) Appellee's dispositive motion sought judgment in its favor solely on a question of law, to wit, whether appellant's claim for breach of oral contract (the only claim in the original complaint) is barred by the statute of frauds in R.C. 1301.12. Because appellee

sought judgment in its favor on a purely legal (not factual) issue, it was not required to submit evidentiary materials, nor is there any reason to expect that it would do so.

{¶ 10} But it is clear that appellee was also seeking a dismissal of the original complaint based upon Civ.R. 12(B)(6). On page three of its November 26, 2002 motion, appellee began its argument in support of its motion with the assertion "Plaintiff's claims are defeated by its own allegations in the Complaint." Appellee went on to rely solely upon R.C. 1301.12 and applicable case law in arguing that appellant's breach of oral contract claim, as it had been pled, was barred. Despite the fact that appellee recited the Civ.R. 56(C) standard and that it argued that "there are no genuine issues of fact in dispute," it is clear that appellee sought dismissal of the original complaint on the grounds that it failed to state a claim upon which relief may be granted, not upon evidence of undisputed facts. Thus, the trial court was required to use the standard articulated in Civ.R. 12(B)(6) or, more precisely, Civ.R. 12(C), since the motion was not filed before the close of the pleadings. A Civ.R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted. *Whaley v. Franklin Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 574, 581, 752 N.E.2d 267. Civ.R. 12(C) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

{¶ 11} A motion for judgment on the pleadings is to be granted when, after viewing the allegations and reasonable inferences therefrom in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Brown v. Wood Cty. Bd. of Elections* (1992), 79 Ohio App.3d 474, 477, 607 N.E.2d 848, citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165–166, 63 O.O.2d 262, 297 N.E.2d 113. It is apparent that the trial court's inquiry into the statute of frauds issue would be the same under either a Civ.R. 12(C) analysis or a Civ.R. 56 analysis. Therefore, it is not reversible error that the trial court used a Civ.R. 56 analysis alone. Accordingly, appellant's third assignment of error is overruled.

{¶ 12} In support of its first assignment of error, appellant argues that the trial court erred in dismissing its claim for promissory estoppel. Appellant also argues that the trial court applied the incorrect statute of frauds to the claim.

{¶ 13} With respect to the first argument, the theory of promissory estoppel was not pled in the original complaint and thus was not addressed in appellee's dispositive motion. The theory made its way into the memorandum in opposition, and into subsequent memoranda, only after appellant sought leave to amend its

complaint to include the theory, leave that it sought only *after* appellee filed its motion to dismiss/motion for summary judgment.

{¶ 14} The court never expressly ruled on appellant's motion for leave to amend its complaint. "[W]hen the trial court enters judgment without expressly determining a pending motion, the motion is * * * considered impliedly overruled." *Seff v. Davis,* 10th Dist. No. 03AP–159, 2003-Ohio-7029, 2003 WL 22999406, ¶ 16, citing *Portofe v. Portofe,* 153 Ohio App.3d 207, 210, 2003-Ohio-3469, 792 N.E.2d 742. In this case, the trial court did take up the issue of the promissory estoppel claim in its decision granting summary judgment, so that it could reasonably be inferred that the court intended to grant the motion for leave to amend. However, we fail to see how the court could have properly performed the burden-shifting analysis required by Civ.R. 56 when appellee's motion made no mention of the then unpled promissory estoppel claim.

{¶ 15} This case presents us with the unusual circumstance wherein one of the distinct claims disposed of through summary judgment was not the subject of the dispositive motion. The moving party's introduction, in its reply memorandum, of evidence directed toward this belatedly added claim should not have been treated as having been submitted with the dispositive motion. That the trial court and the parties apparently accepted this backwards method of summary judgment practice does not render the procedure proper, nor does it render it susceptible of appellate review. The trial court should not have granted summary judgment as to appellant's promissory estoppel claim until the issue had been placed before the court in the proper procedural posture. In this case, the issue was not so placed. Accordingly, we sustain appellant's first assignment of error insofar as it challenges the trial court's grant of summary judgment as to appellant's promissory estoppel claim.

{¶ 16} The issue whether appellant's breach of contract claim is barred by R.C. 1301.12, however, was properly before the trial court for determination as a matter of law. The court found that the alleged contract concerned the sale of a franchise and further found that the sale of a franchise is governed by R.C. 1301.12, the statute of frauds pertaining to the sale of personal property not otherwise covered. The court rejected appellant's argument that because the true aim of the alleged contract was the sale of automobiles, if any statute of frauds applies to the contract, it is the one in R.C. 1302.04, which pertains to the sale of goods. Finally, the court found that because the alleged contract, even if proven to have existed, fails to satisfy the writing requirement of R.C. 1301.12, that failure operates as a total bar to the claim for breach of contract.

{¶ 17} R.C. 1301.12, the statute of frauds for personal property not otherwise covered, provides:

(A) Except in the cases described in division (B) of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by that party's authorized agent.

(B) Division (A) of this section does not apply to contracts for the sale of goods, section 1302.04 of the Revised Code, nor of securities, section 1308.07 of the Revised Code, nor to security agreements, sections 1309.201 and 1309.203 of the Revised Code.

{¶ 18} The term "personal property," as used in R.C. 1301.12, is not defined in R.C. Chapter 13. Black's Law Dictionary defines "personal property" thusly:

In broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate. A right or interest in things personal, or right or interest less than a freehold in realty, or any right or interest which one has in things movable * * * including intangible property. * * *

Personal property is divisible into (1) corporeal personal property, which includes movable and tangible things, such as animals, furniture, merchandise, etc.; and (2) incorporeal personal property, which consists of such rights as personal annuities, stocks, shares, patents, and copyrights.

Black's Law Dictionary (6th Ed.1990) 1217.

{¶ 19} R.C. 1302.04 provides:

(A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this division beyond the quantity of goods shown in such writing.

(B) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of division (A) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

{¶ 20} As used in R.C. 1302.04, "goods" is defined in part as "all things (including specially manufactured goods) which are movable at the time of

identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." R.C. 1302.01(A)(8). "Movable property" has been defined as "[p]roperty the location of which can be changed * * * and documents although the rights represented thereby have no physical location." Black's Law Dictionary (6th Ed.1990) 1217.

{¶ 21} On appeal, the parties agree that Ohio courts use a test known as "predominant purpose" in determining whether a mixed goods and services contract is subject to the provisions of Article Two of the Uniform Commercial Code. See, e.g., *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. No. 02AP–454, 2003-Ohio-3334, ¶ 71; *Ankle & Foot Care Ctrs. v. InfoCure Systems, Inc.* (N.D.Ohio 2001), 164 F.Supp.2d 953; *Allied Indus. Serv. Corp. v. Kasle Iron & Metals* (1977), 62 Ohio App.2d 144, 16 O.O.3d 303, 405 N.E.2d 307. The court in *Allied* set forth the test as follows:

> [T]he test for the inclusion in or the exclusion from sales provisions [of Article Two of the Uniform Commercial Code] is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved.

Id. at 144, 16 O.O.3d 303, 405 N.E.2d 307.

{¶ 22} The purported contract in the instant case is not susceptible of analysis under the foregoing test, however, since rendition of service plays no part at all in the purpose of the contract as appellant pleaded it. Appellant urges that because the ultimate purpose of the transaction was that appellant could sell tangible, movable goods (that is, motor vehicles), the contract is predominantly one for the sale of goods and is subject to R.C. 1302.04. Appellee argues that the alleged contract involved the range of intangible assets attendant to a franchise and thus should be governed by R.C. 1301.12.

{¶ 23} In the original complaint, appellant alleged that under the terms of the purported contract between the parties, appellee agreed to sell to appellant "All of Chesrown's rights to its GMC Franchise or dealer agreements with GM * * *; All customer lists related to the Franchise; All service records related to the Franchise; All goodwill related to the Franchise; [and] All current genuine General Motors GMC factory parts held by Chesrown in relation to the Franchise."

{¶ 24} Thus, the vast majority of assets being purchased consists of intangibles such as contract rights, information, and a favorable community reputation and customer identification with the established business concern. The only moveable objects being purchased were appellee's parts inventory, the value of which, it can reasonably be presumed, did not constitute the majority of the value supposedly pledged in exchange for the alleged contract price of $1.1 million.

Because the substantial majority of items that are the subject of the alleged oral contract are of an intangible and immovable character, the contract cannot be said to have been one for the sale of goods. See *Ackerman Buick, Inc. v. Gen. Motors Corp.* (2001), 66 S.W.3d 51, 46 U.C.C. Rep. Serv.2d 41 (contract for sale of a franchise is one for sale of personal property, not goods). See, also, *De Filippo v. Ford Motor Co.* (C.A.3, 1975), 516 F.2d 1313, 1323, 16 U.C.C. Rep. Serv. 1199 ("Rather than a view of mechanical technicality or mathematical nicety, a view of the reasonable totality of the circumstances should control the characterization of the contract for sale").

{¶ 25} The court of common pleas correctly determined that the statute of frauds applicable to contracts for the sale of personal property not otherwise covered, found in R.C. 1301.12, applies to the contract appellant alleged existed between it and appellee.

{¶ 26} The trial court erred, however, when it determined that the operation of R.C. 1301.12 bars appellant's breach of contract claim entirely for failure of the contract to satisfy that statute's writing requirement. This court has previously held that the failure of an alleged contract to satisfy the writing requirement of R.C. 1301.12(A) is not, ipso facto, fatal to a claim for breach of the contract. See *Insley v. Worthington News, Inc.* (June 28, 1979), 10th Dist. No. 78AP–752, 1979 WL 209158.

{¶ 27} In *Insley,* the parties were brothers who were shareholders in a closely held corporation. After the plaintiff resigned his position with the company, he brought suit for breach of contract, alleging that he and his brother had entered into an agreement whereby the defendant agreed to pay the plaintiff $50,000 in exchange for the plaintiff's resignation from the company and transfer of his shares of stock. The trial court granted summary judgment to the defendant on the breach of contract claim, finding that, since the alleged contract price exceeded $5,000 and the alleged contract failed to satisfy the writing requirement of R.C. 1301.12, the statute completely barred the claim for breach. This court reversed, noting that the predecessor statute to R.C. 1301.12 (former R.C. 1315.05, 1953 H.B. 1) used the value of the contract to define enforceability but that the language of R.C. 1301.12 "relates enforceability of the contract merely to $ 5,000.00 without any reference to the amount of the contract sought to be enforced." *Insley,* supra, 1979 WL 209158, at * 4. The *Insley* court found the change reflected in R.C. 1301.12(A) to be significant and held that, rather than barring the breach of contract claim completely, the language of that statute means that any oral contract for the sale of personal property is enforceable up to, but not in excess of, $5,000.[1]

---

1. The Second Appellate District, in an apparent conflict with this district, held that R.C. 1301.12 was a complete bar to enforcement of an oral contract for the sale of personal

 {¶ 28} We adhere to the principle enunciated in *Insley*. Without passing upon the question whether appellant can ultimately succeed in its pursuit of its claim for breach of contract (which issue is not before us), we hold that the fact that, as alleged in the complaint, the purported contract fails to satisfy the writing requirement of R.C. 1301.12 does not entitle appellee to judgment as a matter of law on the breach of contract claim. Rather, that statute merely limits potential enforceability to $5,000, if its writing requirement is not satisfied. Accordingly, the trial court erred in granting appellee summary judgment on the claim for breach of contract, based upon the operation of R.C. 1301.12.

{¶ 29} Appellant's first assignment of error is overruled as to the trial court's determination that R.C. 1301.12 applies to the alleged contract and sustained as to the trial court's finding that R.C. 1301.12 operates to completely bar appellant's claim for breach of contract.

{¶ 30} For all of the foregoing reasons, appellant's first assignment of error is sustained in part and overruled in part, its second and third assignments of error are overruled in their entirety, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

LAZARUS, P.J., and BOWMAN, J., concur.

---

property not otherwise covered when the contract price exceeded $5,000. *Snyder v. Harness* (May 1, 1980), 2nd Dist. No. CA 6548, 1980 WL 352543. Our approach finds support in several decisions of the federal courts. See, e.g., *Grappo v. Alitalia Linee Aeree Italiane, S.p.A.* (C.A.2, 1995), 56 F.3d 427, 26 U.C.C. Rep. Serv.2d 657; *Olympic Junior, Inc. v. David Crystal, Inc.* (C.A.3, 1972), 463 F.2d 1141; *California Natural, Inc. v. Nestle Holdings, Inc.* (D.C.N.J. 1986), 631 F.Supp. 465, 1 U.C.C. Rep. Serv.2d 1432; *In re Bicoastal Corp.* (Bankr.M.D.Fla. 1990), 117 B.R. 696, 12 U.C.C. Rep. Serv.2d 638.